JULIA BURKLUND SHERWOOD, APPELLANT, V. A. J. SALIS-
BURY, SHERIFF, ET AL., APPELLEES.

299 N. W. 185

FILED JUNE 27, 1941. No. 31145.

*E. H. Evans* and *Urban Simon*, for appellant.

*Harold E. Coates* and *William S. Padley*, contra.

Heard before ROSE, EBERLY and YEAGER, JJ., and THOM-
SEN and WENKE, District Judges.

WENKE, District Judge.

This is an appeal from a decree of the district court for
Lincoln county, dissolving the plaintiff's temporary restrain-
ing order, denying injunction and set-off, and dismissing
plaintiff's action.

This action was instituted in the district court for Lin-
coln county by Julia Burklund Sherwood, formerly Julia E.
Burklund, appellant, against the sheriff of Lincoln county
and A. S. Coates and Hubert J. Price, appellees, to per-
petually enjoin the enforcement of a judgment of $553.75,
interest and costs, obtained by the receiver of the American
State Bank of Sutherland, Nebraska, against Julia E. Burk-
lund, then single, the appellant, on January 9, 1935, in the
county court of Lincoln county, Nebraska, and on March 28,

1936, assigned to the defendant A. S. Coates and transcripted to the district court for Lincoln county on January 17, 1939, and execution issued and levied on real property of the appellant in Lincoln county, for the reason that the defendant Hubert J. Price, who was and is insolvent, is the real and true owner of said judgment; that the appellant is the owner by assignment dated February 11, 1938, of a judgment of $4,005, interest and costs, obtained by Charles W. Burklund against the defendant Hubert J. Price on October 18, 1937, in the district court for Lincoln county, and that if the enforcement of the judgment against plaintiff is not enjoined and set-off thereof allowed as against the plaintiff's judgment and credited thereon, the plaintiff is without adequate remedy at law and will be irreparably damaged.

Temporary restraining order was entered and upon hearing on September 13, 1940, default was entered against the defendant Hubert J. Price and trial had as to the defendant A. S. Coates, the court finding that he was the real and true owner of said judgment, and thereupon vacated and set aside the temporary restraining order, denied perpetual injunction, and dismissed plaintiff's action at plaintiff's cost. From this judgment plaintiff appeals, contending that the judgment is contrary to the facts and law.

Upon this appeal, so far as is necessary, this court retries the issues of fact and law presented by the record *de novo,* and reaches an independent conclusion without reference to the conclusion reached in the district court. Comp. St. 1929, sec. 20-1925.

The record discloses that Hubert J. Price was the sole managing officer of the American State Bank located at Sutherland, Nebraska, until it was taken over by the department of banking and E. H. Luikart appointed receiver. The receiver obtained a judgment against the appellant on January 9, 1935, for obligations owing the bank, in the sum of $553.75 with interest and costs, which judgment remained part of the assets of the receivership until offered for public sale with other remaining assets of said bank on March 12,

1936. Subsequent to the failure of said bank, and prior to the sale of the remaining assets, Hubert J. Price had moved from Sutherland and was practicing as an attorney at law at Grand Island and subsequently at Gothenburg. A. S. Coates, who was an elderly gentleman and justice of the peace, had for many years lived at Sutherland, and on the day of the sale of the remaining assets of the American State Bank had gone to North Platte and, pursuant to advice from Mr. Price, bid upon the remaining assets of both the American State Bank and Farmers State Bank, which were being offered for sale at the same time, and successfully placed the highest bid upon the remaining assets of both the American State Bank in the amount of $230 and the Farmers State Bank somewhere between $500 and $800. It appears that at this sale Mr. Coates and Mr. Price were sitting across the table from each other, and that numerous other parties were present at said sale, including Fred Siegelin and Leo Goedert, both of whom had notes, upon which they were makers, among the remaining assets of the American State Bank, and upon which they were bidding; that during the course of the bidding Mr. Price called them into the hall away from the room in which the assets were being sold and advised them that if they ceased bidding he would let them have their notes at a certain price, as he was bidding on the assets, and pursuant to this conversation they ceased to bid, and subsequently the bids of A. S. Coates on the assets of the American State Bank and Farmers State Bank were accepted; that during the sale, whenever any one had bid higher than Coates, Mr. Price would kick Mr. Coates on the leg under the table and thereupon Coates would raise his bid. At the conclusion of the sale 25 per cent. of the purchase price was required to be deposited and Mr. Price gave his check for this amount for both bids made by Mr. Coates. This Mr. Coates testifies he subsequently repaid in cash. However, on February 24, 1936, immediately before this sale, Mr. Coates had made an application to the county assistance office for old-age assistance in which application he set forth that the only assets he had was his home and

the lot on which it was located in Sutherland, and upon subsequent applications he never at any time listed the ownership of these assets. After the sale of the assets of the American State Bank was confirmed, Mr. Coates testified that he paid the receiver the balance of the purchase price in cash and received from him an assignment of the assets purchased; however, he immediately turned over all of these assets to Mr. Price, except two notes, being the notes of Herman Mine and Leo Goedert, and some fixtures. Mr. Goedert testifies that Mr. Coates told him he received his note as part of the deal with Price; that after the sale Mr. Siegelin called on Mr. Price at Gothenburg in response to a letter and at that time Mr. Price had a large envelope from which he drew forth the note of Mr. Siegelin which was part of the assets, and that he had the other papers with him; that Mr. Price on numerous occasions called on the appellant's father in Sutherland in regard to this judgment and later, in the spring of 1937, wrote to appellant in regard thereto setting forth that he had purchased these assets of the American State Bank, and that unless arrangements were made to pay her judgment appellant would be brought into court to make a disclosure of her assets in order to satisfy the judgment; that in December, 1938, Mr. Padley, who is an attorney at law at Gothenburg, was consulted by Mr. Price in regard to collecting the remaining assets of this bank and requested him to consult Mr. Coates in regard thereto; that Mr. Coates was at the time not acquainted with Mr. Padley, but he did assign the Siegelin note to him for collection and authorized him to proceed with other matters. During all this time and up to the time of this suit Mr. Price made no accounting of any kind to Mr. Coates, and outside of the Goedert note on which he testifies he collected $2.50, and the Herman Mine note, which he settled for $10, and for a small amount he received for some fixtures, Mr. Coates, who lived in Sutherland, made no effort to collect any of the assets nor employed any legal counsel for that purpose, although his son was a practicing lawyer at North Platte, and all of the matters were handled by Mr. Price or

some one at the direction of Mr. Price. Nor was Mr. Price called to explain any of these matters, although defendant Coates testified they were bought at his advice.

No attempt was made by A. S. Coates to collect the Burklund judgment, although he knew appellant and her father for years and lived in the same town of Sutherland, and during this time he was financially destitute, was sickly and needed medical attention.

On October 18, 1937, Charles W. Burklund on notes dated September 19, 1931, obtained a judgment against the defendant Hubert J. Price for $4,005 with interest and costs, which judgment was assigned to plaintiff on February 11, 1938, and remains wholly unsatisfied. The evidence further shows that on March 7, 1933, James Peterson obtained a judgment in the county court of Lincoln county against Hubert J. Price for the amount of $578.40 ; that on September 15, 1937, the department of banking obtained a judgment in the district court for Lincoln county against the defendant Hubert J. Price in the sum of $6,766.17.

While the lower court found from the facts that A. S. Coates was the true owner of said judgment, from a careful analysis of the entire testimony and all of the circumstances in connection with the dealings of the parties it would appear clear that Hubert J. Price was actually the owner of this judgment, and that Mr. Coates merely had the assignment thereof in his name for convenience and without any beneficial ownership therein, and it further appears without question from the default entered against Mr. Price and the evidence offered that at all times he was insolvent and that appellant would be without any means at law to satisfy the judgment assigned to her against the said Hubert J. Price. As has been stated by our court in the case of *Cochran v. Cochran*, 62 Neb. 450, 87 N. W. 152: "If the judgment debtor owns real estate, the legal title to which is in another, but without any beneficiary interest, and the judgment debtor owns all the beneficiary interest in the land, a court of equity may, in proper proceedings, direct the defendant's interest in the land to be sold whether or not

the title was so placed in the third person with fraudulent intent." And so here, where the plaintiff's judgment debtor, Price, owns a judgment against the plaintiff, his judgment creditor, the legal title to which is in the defendant Coates, but without any beneficiary interest, and the judgment debtor owns all the beneficiary interest in the judgment, a court of equity may, in a proper proceeding, direct the defendant's interest in the judgment to be set off against the plaintiff's judgment, whether or not the title was so placed in the third person with fraudulent intent.

Our court has held: "Insolvency of a party, against whom set-off is sought, may be sufficient ground for a court of equity to allow a set-off which is not provided for by statute." *Clark Implement Co. v. Wallace,* 103 Neb. 26, 170 N. W. 171. See *Richardson v. Doty,* 44 Neb. 73, 62 N. W. 254. And as stated in *Wells v. Cochran,* 88 Neb. 367, 129 N. W. 533: "The insolvency of a party against whom a set-off was claimed is recognized as sufficient to justify the intervention of a court of equity."

Where therefore, as here, the record shows that the defendant A. S. Coates is an elderly gentleman without means other than his home, and where the defendant Hubert J. Price is shown to be insolvent and a judgment against him could not be collected, and where he owns all of the beneficiary interest in a judgment against the appellant, but held in the name of the defendant A. S. Coates, who has no interest therein, but is however attempting to enforce the judgment in his name and against the property of the appellant who has an unsatisfied judgment against the defendant Hubert J. Price, and it appears that the enforcement of said judgment would cause irreparable damage to the appellant for which she has no adequate remedy at law, a court of equity should relieve the party from this inequitable situation, and the enforcement of the judgment in the name of A. S. Coates should be permanently enjoined, the judgment be declared to be the property of the defendant Hubert J Price, and because of his insolvency a set-off of the full amount of said judgment and costs be allowed and credited

on the unsatisfied judgment of appellant against the defendant Hubert J. Price, satisfying the judgment against appellant in full, and taxing the costs of this proceeding against the defendants A. S. Coates and Hubert J. Price.

It further appears that subsequent to the commencement of this action A. S. Coates made an assignment of this judgment to his daughter, Nevita Schatz, and that a lien for attorney's fees was filed in favor of Harold E. Coates and W. S. Padley; however, these all being filed subsequent in time to the commencement of this action create no lien or right in and to the judgment that in any way affects this judgment as to the appellant's right of set-off as herein determined.

Wherefore the findings and judgment of the lower court are reversed and the cause is remanded with directions.

REVERSED.